J-S12007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DAVID WALTER DEMPSEY | : | |
| | : | |
| Appellant | : | No. 1992 EDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered May 20, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0001260-2024

BEFORE:   McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 8, 2026**

David Walter Dempsey appeals from the judgment of sentence entered following his convictions for theft by failure to make required disposition of funds received, receiving stolen property, and deceptive or fraudulent business practices.[1] Dempsey argues the court erred in allowing the Commonwealth to introduce the testimony of two witnesses and in failing to merge his sentence for receiving stolen property with his sentence for failure to make required disposition of funds received. He further argues the court abused its discretion in imposing a harsh and excessive aggregate sentence. We affirm.

The trial court provided the following recitation of the underlying facts:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3927(a), 3925(a), and 4107(a)(2), respectively.

[Dempsey] owned and operated a business called Elder Care Direction, for which he presented himself as a finances man[a]ger for elderly persons who needed assistance managing their monies. Edith Cloud (hereinafter "Cloud"), an 85-year-old woman, contracted with [Dempsey] for his services to manage her finances in or around October of 2020. As part of their written agreement, Cloud gave [Dempsey] Two Hundred and Eight-Five Thousand ($285,000.00) Dollars and [Dempsey] was to remit Four Thousand Four Hundred ($4,400.00) Dollars back to Cloud on the 28th day of each month so that Cloud could pay her rent and other bills.

Initially, [Dempsey] began performance of their contact. Subsequently, [Dempsey]'s performance became sporadic. On October 27, 2022, Cloud notified [Dempsey] that she wanted to terminate their contract and receive the remainder of her money back. By November 25, 2022, [Dempsey] had not returned Cloud's money. Cloud sent a second notification to [Dempsey] advising him that she wanted to terminate their contract and receive the return of her funds.

In early 2023, Cloud's daughter intervened on her behalf with [Dempsey] and demanded the return of Cloud's money. In Cloud's daughter's conversations, [Dempsey] made multiple false statements that money had been wired on February 1, 2023, including that the bank messed up the wire transfer and that the bank required a signed release to transfer the money. In reality, there was never any wire transfer initiated by [Dempsey] and PNC Bank did not require a signed release to transfer the money. Although Cloud and her daughter learned from PNC Bank that a release was not required, Cloud, in the presence of her daughter, did sign a release and gave it to [Dempsey] to initiate a return of her funds. To date, Clou[d] has not received a return of any of her funds and [Dempsey] stopped making monthly payments to her.

In reviewing bank records, Detective Kathleen Byrne of Lower Salford Police discovered that [Dempsey] mismanaged finances by redirecting clients' funds to himself for personal expenses, resulting in nonpayment of multiple clients' accounts. [Dempsey] also intermingled clients' funds, which resulted in monies held for one person to be used to pay other people's accounts. As a result, Lower Salford Police charged [Dempsey].

Following those charges, several victims came forward to their respective police departments to report similar crimes involving their money that was supposed to have been managed by [Dempsey]. Specifically, Susan Connison (75 years old) and Robbie Harper (70 years old) invested money with [Dempsey], who was to provide monthly checks in specific amounts for the time period of October 27, 2022, through July 17, 2023. During this time period, [Dempsey] did not deliver the required amounts and/or did not deliver the required amounts on time. Both Connison and Harper demanded a return of the funds they had invested with [Dempsey] and both never received a return of their funds.

Trial Court Opinion, 8/14/25, at 3-4 (citations to N.T. omitted; formatting altered).

Prior to trial, the Commonwealth filed a Motion to Admit Evidence of Other Crimes or Wrongdoing, requesting the court allow Harper and Connison to testify. The Commonwealth asserted their testimony was admissible to prove a common plan or scheme; a lack of mistake, intent, and knowledge; and to establish the *res gestae* of the crime.

The court granted the motion in part. It allowed Harper and Connison to testify only:

(a) That they had invested money with [Dempsey] and that [Dempsey] was to provide monthly checks in specific amounts;

(b) That the obligations of [Dempsey] were in effect at or about October 27, 2022 through July 17, 2023;

(c) That during this time period around October 27, 2022[,] through July 17, 2023, [Dempsey] did not deliver the required amounts and/or did not deliver the required amounts on time;

(d) That the witnesses demanded a return of the funds they had invested; [and]

(e) That Dempsey did not return the funds.

- 3 -

Order, 12/6/24, at 1 ¶ 1.

Immediately prior to Connison's and Harper's testimony, the court instructed the jury that their testimony was admitted only to show "lack of mistake":

> You're about to hear from this witness and another witness about dealings that they had with individuals involved in this case.
>
> Now, the evidence that's being presented to you is for a very limited purpose. It's for the purpose of the Commonwealth attempting to prove a lack of mistake, a lack of mistake. It's not to be considered for you for any other purpose, other than that, which I just said, lack of a mistake.
>
> You're not to regard the evidence you're about to hear as showing that the defendant is a person of bad character or has criminal tendencies for which you might be inclined to infer guilt in this case that we are trying.

N.T., 2/25/25, at 85-86.

The jury convicted Dempsey of the above crimes, each graded as a second-degree felony.[2,3] The court ordered a pre-sentence investigation ("PSI") report. Following a sentencing hearing, the court imposed three consecutive sentences of 12 to 24 months' incarceration each — an aggregate of three to six years' incarceration — followed by three years' probation. The court also ordered him to pay $281,000 restitution. Dempsey filed post-sentence motions, which the court denied.

Dempsey appealed. He raises the following issues:

---

[2] Dempsey's first trial resulted in a mistrial. The case was retried.

[3] Other charges/convictions were dismissed, withdrawn, or vacated.

> 1. Whether the trial court abused its discretion by granting the Commonwealth's Motion to Admit Evidence of Other Crimes or Wrongdoing.
>
> 2. Whether the trial court abused its discretion by imposing an unduly harsh and excessive sentence.
>
> 3. Whether the trial court imposed an illegal sentence when it failed to merge theft by failure to make required disposition with receiving stolen property.

Dempsey's Br. at 6 (suggested answers omitted).

Dempsey first argues the court erred in granting the Commonwealth's motion to admit Connison's and Harper's testimonies of Dempsey's prior bad acts. Dempsey claims that the defense he presented to the jury was "that this case was in essence a civil matter and not a criminal case." *Id.* at 35. He contends that because he never advanced a defense of "mistake or accident," his intent was not at issue, rendering the prior bad acts evidence irrelevant character evidence, and more prejudicial than probative. *Id.* at 35-36. He likens his case with *Commonwealth v. Ross*, 57 A.3d 85, 101 (Pa.Super. 2012) (*en banc*), claiming that there, we held the prior bad acts testimony inadmissible to show intent where intent was not at issue.

"Admissibility of evidence is within the sound discretion of the trial court and we will not disturb an evidentiary ruling absent an abuse of that discretion." *Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017)

"Rule 404(b) precludes the admission of evidence of a person's other bad acts (including other crimes) for the purpose of demonstrating the person's bad character[.]" *Commonwealth v. Walker*, 350 A.3d 54, 61-62 (Pa. 2026) (citing Pa.R.E. 404(b)(1)). "[I]n other words, the Commonwealth

cannot present evidence of a defendant's other bad acts solely for the purpose of establishing the defendant's propensity to commit crimes (*i.e.*, because he did it once, he probably did it again)." ***Id.*** at 62. However, prior bad acts evidence may be admissible if not offered to prove criminal propensity, but instead "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

When evidence of prior crimes is offered to prove absence of mistake or lack of accident, it is only admissible "where the manner and circumstances of two crimes are remarkably similar." ***Commonwealth v. Tyson***, 119 A.3d 353, 359 (Pa.Super. 2015) (*en banc*) (quoting ***Commonwealth v. Kinard***, 95 A.3d 279, 294-95 (Pa.Super. 2014) (*en banc*)); ***see, e.g., Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009) (holding evidence of appellant's prior abuse of victim admissible to refute claim that appellant did not intend to kill the victim); ***Commonwealth v. Boczkowski***, 846 A.2d 75, 89 (Pa. 2004) (holding evidence that defendant murdered previous wife in similar manner was admissible to show his murder of next wife "was not accidental, but rather, was a result of appellant's deliberate act"). In addition, the prior bad acts must not be too far removed in time in order to be considered probative of the instant crime. ***Commonwealth v. Gilliam***, 249 A.3d 257, 272 (Pa.Super. 2021); ***see also Tyson***, 119 A.3d at 359 ("remoteness in time is a factor to be considered in determining the

probative value of other crimes evidence"), 363 (stating remoteness analysis applies to evidence of absence of mistake or lack of accident).

Further, prior bad acts evidence is only admissible in a criminal case "if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). In this context, "unfair prejudice" means "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." **Gilliam**, 249 A.3d at 272 (quoting **Commonwealth v. Dillon**, 925 A.2d 131, 141 (Pa. 2007)). The court may ameliorate the potential for unfair prejudice through a jury instruction regarding the limited purpose for which the evidence is admitted. **Id.**; **see also Hicks**, 156 A.3d at 1129; **Sherwood**, 982 A.2d at 497; **Boczkowski**, 846 A.2d at 89; **Tyson**, 119 A.3d at 360, 362.

Here, to prove Dempsey guilty of theft by failure to make required disposition of funds received and deceptive or fraudulent business practices, the Commonwealth was required to prove that Dempsey had acted intentionally. **See** 18 Pa.C.S.A. §§ 3927(a), 4107(a)(2); **Commonwealth v. Eline**, 940 A.2d 421, 433 (Pa.Super. 2007). To prove Dempsey guilty of receiving stolen property, the Commonwealth needed to prove Dempsey had acted knowingly or with a personal belief. **See** 18 Pa.C.S.A. § 3925(a); **Commonwealth v. Newton**, 994 A.2d 1127, 1131-32 (Pa.Super. 2010).

Connison's and Harper's testimonies regarding Dempsey's prior bad acts were relevant to prove Dempsey possessed the requisite intent and that his actions were not due to any mistake on his part. **See** Pa.R.E. 404(b)(2). The

actions he took with all three victims were remarkably similar and occurred during the same period. **Tyson**, 119 A.3d at 359. Moreover, the trial court alleviated any potential for prejudice by limiting the scope of the testimony and instructing the jury that it was only to consider the evidence as proof of Dempsey's lack of mistake and not as evidence of his criminal propensity. **Gilliam**, 249 A.3d at 272. The court did not abuse its discretion in admitting the testimony.

We reject Dempsey's argument that the question of whether he acted intentionally or mistakenly was not at issue here because he asserted he was guilty only of breaching the contract. A "defendant does not have to actually forward a formal defense of accident, or even present an argument along those lines, before the Commonwealth may have a practical need to exclude the theory of" the defendant's having acted accidentally. **Boczkowski**, 846 A.2d at 89. Dempsey's breach-of-contract defense did not eliminate the Commonwealth's burden of proving the *mens rea* elements of intentional and knowing conduct.

Dempsey's reliance on **Ross** is misplaced. In that case, the identity of the murderer was at issue; *mens rea* was not. There was no question in that case, given the brutality of the murder, that the murderer had intended to commit first-degree murder. **Ross**, 57 A.3d at 101. Here, we have the reverse situation. Dempsey's identity was not at issue — his intentions were.

Dempsey next argues his sentence was harsh and excessive. He thus challenges the discretionary aspects of his sentence. We will only review such

an issue if (1) the appeal was timely, (2) the issue was preserved, (3) the appellant's brief includes a Pa.R.A.P. 2119(f) concise statement of the reasons relied upon for allowance of appeal, and (4) the statement "raises a substantial question whether the sentence is inappropriate under the Sentence Code." ***Commonwealth v. Snyder***, 289 A.3d 1121, 1126 (Pa.Super. 2023).

Dempsey has complied with the first three requirements. Whether a substantial question exists must be determined on a case-by-case basis. ***Commonwealth v. Bartic***, 303 A.3d 124, 134 (Pa.Super. 2023). "A substantial question exists when an appellant presents a colorable argument that the sentence imposed is either (1) inconsistent with a specific provision of the Sentencing Code or (2) is contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (quotation marks and citation omitted). We may not look beyond the Rule 2119(f) statement to determine whether a substantial question exists. ***Id.***

In his statement, Dempsey contends the court abused its discretion in sentencing him "to three consecutive state prison sentences without adequately considering [his] lack of criminal record, four minor children, remorse and desire to make restitution." Dempsey's Br. at 33. A claim that consecutive sentences were excessive and that the court failed to consider mitigating factors states a substantial question. ***Commonwealth v. Swope***, 123 A.3d 333, 339-40 (Pa.Super. 2015). We therefore turn to the merits of Dempsey's claim.

We review this claim for an abuse of discretion. ***Commonwealth v. Goodco Mech., Inc.***, 291 A.3d 378, 405 (Pa.Super. 2023). "[W]here the court has imposed a sentence falling within the sentencing guidelines, we will only vacate and remand where it applied the guidelines erroneously or 'the case involves circumstances where the application of the guidelines would be clearly unreasonable.'" ***Id.*** (quoting 42 Pa.C.S.A. § 9781(c)). We consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

There is no merit to Dempsey's claim that the court failed to consider his "lack of criminal record, four minor children, remorse and desire to make restitution." Dempsey's Br. at 37. Although Dempsey cites authorities in this section of his brief, this is the extent of Dempsey's explanation of the reasons he believes he is entitled to be resentenced. His argument is underdeveloped and waived. Dempsey fails to apply any of the authorities he cites to the facts of this case and explain why he believes they warrant appellate relief.

In any event, the issue is meritless. The court had the benefit of a PSI report, and we therefore presume it was aware of all relevant sentencing criteria. **See** Trial Ct. Op. at 11; N.T., 5/20/25, at 3-4; ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa.Super. 2009) ("[W]here the trial court is

informed by a [PSI] report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed"). Moreover, the record reflects the court duly considered these factors. *See* Trial Ct. Op. at 12-13; N.T., 5/20/25, at 26-30. We may not re-weigh these factors and substitute our judgment for that of the sentencing court. ***Commonwealth v. Lawrence***, 313 A.3d 265, 286 (Pa.Super. 2024), *appeal denied*, 327 A.3d 616 (Pa. 2024).

Nor was the imposition of consecutive standard-range sentences[4] clearly unreasonable, given the circumstances of the case. The decision to impose consecutive sentences is within the discretion of the court, and a defendant is not entitled to a "volume discount" for his crimes. ***Lawrence***, 313 A.3d at 286 (citation omitted).

Here, prior to imposing sentence, the court stated:

> There's a cold-heartedness here or some sort of misdirection that as long as my kids are being taken care of and my ex is being taken care of, I'm doing the right thing, when there's an elderly person in need of funds . . . I don't need the legislature to tell me how egregious this crime is. Edith told me.
>
> People work their whole lives to be able to say — I'll quote my mother: I don't want to be a burden on my children. I'm going to guess there were a lot of mothers who said that over the years. And that Edith wanted a peace of mind. And $281,000 is a lot of

---

[4] The standard range guideline sentence for each of Dempsey's convictions was a minimum of six months' incarceration to a minimum of 14 months' incarceration. ***See*** Trial Ct. Op. at 1. Dempsey's sentences of 12 to 24 months' incarceration each fell towards the top end of this range. ***Id.*** at 2.

money, but what you stole from her was peace of mind. That's far more valuable than $281,000.00, sir.

You did this while hiding behind some facade of compassion towards the people that you were supposed to be helping the people you were pretending to serve, hiding behind the fact that this was some sort of business that just failed. It failed because you took the money and you used it for purposes you shouldn't have used it for. There was no business plan here.

You say in the presentence investigation report that things got difficult. But because of these allegations, the business failed. This business was not structured to do anything but fail. You can't make withdrawals that the prosecutor showed us during this trial and use them for the purposes you used them for and hope to be able to meet the obligations or at least pay back the principal that you were obligated to pay. This was not civil. This was criminal.

And then to lie about it, and instead of saying: You know what? I failed — but to hide and to lie. Meanwhile, putting this person through more and more stress and aggravation at an age where she should be sitting back ... but where she should have at least had peace of mind. This is conduct that can't be excused.

And I hear: I want to pay you back. I want to do the right thing, well it's the same thing you told her before. You're saying it again today.

N.T., 5/20/25, at 27-29. The court did not abuse its discretion, and Dempsey's three-to-six-year sentence is not clearly unreasonable.

In his final issue, Dempsey argues the court erred by failing to merge his sentence for receiving stolen property with his sentence for theft by failure to make required disposition of funds received. He claims the two convictions arose from a single criminal act. He also asserts that to commit theft by failure to make required disposition of funds received, a person must commit all elements of receiving stolen property. Dempsey's Br. at 40-41. He likens his argument to the analysis in **Commonwealth v. Crawford**, 254 A.3d 769,

781-82 (Pa.Super. 2021). He asserts that in that case, the Court held that receiving stolen property merges with theft by unlawful taking "when both offenses arise from the same incident and involve the same property." *Id.* at 40.

Here, the trial court found the sentences were not subject to merger:

> Although stolen property is an element of Receiving Stolen Property, that offense does not share all of the elements of Theft by Failure to Make Required Disposition of Funds. In fact, these two (2) offenses share no element beyond receipt of objects. Specifically, Theft by Failure to Make Required Disposition of Funds requires receipt contingent upon an agreement between parties, while Theft by Receiving Stolen Property requires receipt with the intent to receive, retain, or dispose of stolen property or knowledge that the property is stolen. Thus, both different in *mens rea* and *actus reus*.

Trial Ct. Op. at 17.

"A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law." *Commonwealth v. Williams*, 958 A.2d 522, 527 (Pa.Super. 2008) (citation omitted). "Consequently, our standard of review is *de novo* and the scope of our review is plenary." *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009).

Merger is controlled by Section 9765, which states:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. "[T]he current state of merger law in Pennsylvania makes clear there is no merger if each offense requires proof of an element

the other does not." ***Commonwealth v. Quintua***, 56 A.3d 399, 401 (Pa.Super. 2012) (internal citation omitted).

In ***Crawford***, a panel of this Court found the appellant's convictions for theft by unlawful taking[5] and theft by receiving stolen property should merge. In doing so, the ***Crawford*** Court relied on previous decisions of this Court, including ***Commonwealth v. Young***, 35 A.3d 54, 63 (Pa.Super. 2011), in which we found, "Because each and every element of theft by unlawful taking is necessary to establish theft by receiving stolen property, theft by unlawful taking is a lesser included offense of theft by receiving stolen property." ***Young***, 35 A.3d at 63.

This case does not involve theft by unlawful taking. Here, defendant was convicted of theft by failure to make required disposition of funds received. This crime is defined as follows:

> **§ 3927. Theft by failure to make required disposition of funds received**
>
> **(a) Offense defined.--**A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a). The offense contains four elements:

---

[5] 18 Pa.C.S.A. § 3921.

1. The obtaining of property of another;

2. Subject to an agreement or known legal obligation upon the recipient to make specified payments or other disposition thereof;

3. Intentional dealing with the property obtained as the defendant's own; and

4. Failure of the defendant to make the required disposition of the property.

*Commonwealth v. Crafton*, 367 A.2d 1092, 1094-95 (Pa.Super. 1976),

*opinion corrected*, 599 A.2d 1353 (Pa.Super. 1991).

The offense of Receiving Stolen Property is codified as follows:

**§ 3925. Receiving stolen property**

**(a) Offense defined.**--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.

18 Pa.C.S.A. § 3925(a). This offense includes three elements:

(1) intentionally acquiring possession, control or title, retaining, disposing, or lending on the security of movable property of another;

(2) with knowledge or belief that it was probably stolen; and

(3) intent to deprive permanently.

*Young*, 35 A.3d at 63.

Receiving stolen property is not a lesser included offense of theft by failure to make required disposition of funds received. Not all elements of the former are elements of the latter. Receiving stolen property requires the actor to act with the knowledge or personal belief that the property was stolen (or that they are stealing it) and with the intent of permanently depriving the

rightful owner of it. ***Young***, 35 A.3d at 63. Theft by failure to make required disposition of funds has no such requirements. It only requires that the defendant intentionally deal with the other person's property as their own and fail to dispose of it in accordance with an agreement. The offenses do not merge.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2026